[Civ. No. 4907. First Appellate District, Division Two.—February 27, 1925.]

ESTRELLE E. HEARD, Respondent, v. C. R. TATE, Appellant.

[1] PROMISSORY NOTES — FRAUD—EVIDENCE. — In an action upon a promissory note executed by defendant to plaintiff's mother, which note was transferred by the mother to her agent by a separate writing procured through the fraud of the agent, on which writing the agent, later, showed payment of the note in full, the defendant stood in no better position than said agent,

where the defendant knew that the agent had obtained by fraudu-
lent means, among other properties, the note in suit.

[2] ID.—FINDINGS—EVIDENCE.—In such action, the trial court com-
mitted no error in making certain findings.

(1) 8 **C. J.**, p. 1052, n. 50.     (2) 8 **C. J.**, p. 1054, n. 69.

APPEAL from a judgment of the Superior Court of
Alameda County. T. W. Harris, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jesse Robinson for Appellant.

O. G. Foelker and E. C. Miles for Respondent.

STURTEVANT, J.—The plaintiff commenced an action
against the defendant to recover the amount due on a prom-
issory note. The defendant appeared and answered; a trial
was had before the judge sitting without a jury, and from
a judgment in favor of the plaintiff the defendant has ap-
pealed under section 953a of the Code of Civil Procedure.

As stated by the appellant the record presents two points:
First, was fraud proved or shown with respect to appellant;
second, were certain findings supported by the evidence.
Prior to the first day of June, 1921, C. R. Tate and J. E.
Nichols were real estate agents. At that time Edith M.
Heard, the mother of the plaintiff, was the owner of lands
in the city of Santa Cruz of an alleged value of $45,000,
mortgaged in the sum of $6,000. At the same time the de-
fendant was the owner of lands in San Joaquin County of
an alleged value of $20,000, mortgaged in the sum of $18,000.
Thereafter J. E. Nichols asked Mrs. Heard to employ him as
agent to negotiate an exchange, which she did, and as a
result of the employment her lands were exchanged for the
defendant's lands and a part of the payment was the prom-
issory note for the face value of $1,000 which is involved in
this case, and also a note and mortgage in the sum of $15,-
000. After that transaction had been completed Nichols
approached Mrs. Heard and undertook to negotiate another

exchange. At this time Tate and Nichols were occupying the same office in Oakland. Nichols' written authorization dated March 30, 1922, recited that Mrs. Heard was the owner of the above note and mortgage in the sum of $15,000, also a house and lot in Sunnyvale of the alleged value of $2,000, also a quantity of hay of an alleged value of $300, also the promissory note in the sum of $1000, which is the subject of this suit. One Roddick was the owner of an apartment house known as 560 Thirty-third Street, in Oakland. J. E. Nichols at the same time owned some worthless real estate tracts of the face value of $7,000 or more. When the defendant offered the above-mentioned written authorization in evidence it contained a covenant authorizing Nichols to keep for his own use any portion of the properties owned by Mrs. Heard, which he was not compelled to turn over to Roddick. Later Nichols reported to her that Roddick would not accept the accrued interest on the mortgage note, $525; that he would not accept the promissory note, $1,000; that he would not accept the hay, $300; that he would not accept the Sunnyvale property, $2,000; but if she would transfer those items to him that he would turn over to Roddick properties to make up the difference. She acted on his statement so made to her. She executed a deed to the Sunnyvale property to Nichols and Nichols erased the name of the grantee and inserted the name of the defendant. The promissory note in the sum of $1,000 was at Santa Cruz. Later Nichols told Mrs. Heard that owing to a business transaction which he had with this defendant he would like the plaintiff to execute a writing as follows:

"April 25, 1922.

"Mr. C. R. Tate,

"Oakland, Calif.

"Dear Sir: This is to certify that I have sold that certain note signed by yourself to myself for $1,000 due on demand and dated on or about December 1, 1921. This note I sold to Mr. J. E. Nichols and I will turn over to you the said note in a few days as it is in Santa Cruz and I have sent for it but it has not arrived as yet and when it comes I will return it to you so this will act as a receipt in full

for the same. I am giving you this letter so that you and J. E. Nichols can transact your business without delay.

"Yours truly,

"EDITH M. HEARD."

Still later Nichols wrote below Mrs. Heard's signature:

"The above said note is paid in full.

"J. E. NICHOLS."

Within a month after Mrs. Heard had signed the paper quoted above, her attorney, Mr. Netherton, met Nichols in Santa Cruz and had a talk with him and later repeated the conversation to Mrs. Heard. Thereupon such court proceedings were commenced that later Mr. Netherton had a talk with Tate. In that conversation Mr. Netherton testified: "I asked him if he didn't know all the time that he was dealing with Mr. Nichols that Nichols had defrauded Mrs. Heard out of many thousands of dollars. He said he did." In the same conversation Mr. Netherton said: "In my opinion Mr. Tate you have no title to that property (the Sunnyvale property) whatever, but the deed which you hold is a forgery for the reason that I have ascertained that Mr. Nichols erased his name from the deed and wrote yours in." In another place Mr. Netherton testified regarding the same conversation: "We discussed at the conversation the matter of the deal by which Mr. Tate came into possession of the Santa Cruz property, and Mr. Tate said at that time that he told Mr. Nichols when that deal was done that he hadn't favored putting that deal over on a widow woman and that he couldn't understand why Mrs. Heard wanted the Manteca property; and that Nichols' reply was that Mrs. Heard was going to let him farm, that was the reason they wanted the Manteca property. . . . I asked Mr. Tate if it wasn't a fact that he had office room for some time with Mr. Nichols and if he didn't know his unsavory reputation; he said he had ascertained it while he was in the office and that his friends had told him of the unsavory reputation of Nichols and advised him to get out of the office, which he said he had done.

Estrelle E. Heard, called as a witness in her own behalf, testified that the agreement of exchange when signed by herself and mother had a blank space and that the passage

which we have mentioned above authorizing Nichols to keep for his own use any portion of the properties owned by Mrs. Heard which were listed in the agreement and which he was not compelled to turn over to Roddick was not on the paper at the time she and her mother signed it; and that the passage was inserted afterwards over their signatures. She further testified that her mother had so much confidence in Nichols that she did not read the instrument before she signed it. She would guess at them. She took his word for them. As to the alteration of the deed, she testified that in a conversation between Mrs. Heard and the defendant the defendant stated that he "thought to save the expense of making a new deed and revenue stamps and so forth he would insert his name in the deed."

Mrs. Edith Heard testified that at one time Nichols said that he put one over on Roddick, that the contracts which he gave him were not worth the paper they were written on. She also testified that Nichols did not pay to Roddick anything excepting the $15,000 mortgage, although Nichols represented to her that he was to pay Roddick the mortgage and $3,825, consisting of the other properties which we have mentioned above, or the equivalent thereof. She also testified that the defendant had stated to her that the change in the deed "was simply done in regard to save expense in making out a new deed, they (Nichols and Tate) did not see what difference it made." She stated that she had signed papers in blank for Nichols, but on being asked if the agreement to exchange was one of those papers she answered that she did not believe it would be one of them.

The defendant Tate took the stand in his own behalf and testified that the change in the deed, made by erasing the name of Nichols and inserting the name of Tate, "was initialed by the same initials as the notary who had acknowledged Mrs. Heard's signature. . . . There appeared on the margin the initials of either Mrs. Heard or the notary." However, the deed being presented, no initials appeared on the margin thereof.

[1] If the trial court believed Miss Heard as a witness he was entitled to draw the conclusion that Nichols made large amounts of secret profits while acting as the agent of Mrs. Heard and that among the profits which he attempted

to so acquire was the note in suit. If the trial court believed the testimony of Mr. Netherton then the trial court was bound to reach the conclusion that Tate knew all the time that he was dealing with Nichols that Nichols defrauded Mrs. Heard out of many thousands of dollars. If the trial court took into consideration that during all of these times Tate and Nichols occupied the same office, and if it took into consideration all of the other circumstances which we have enumerated, certainly the trial court was at liberty to infer that among the other properties which Tate knew Nichols had obtained by fraudulent means the note in suit was one of the items. For these reasons Tate stood in no better position than Nichols. [2] It is patent, therefore, that the trial court made no error in making findings 3, 4, and 6, the findings complained of.

The judgment appealed from is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 27, 1925.

All the Justices concurred.